UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

    -against-

MOHAMMED SALEH,

                Defendant.

93cr181

MEMORANDUM & ORDER

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WILLIAM H. PAULEY III, Senior United States District Judge:

        Defendant Mohammed Saleh moves for a reduction of his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A). Saleh contends that "extraordinary and compelling reasons" warrant his release, including: (1) a heightened risk of serious illness if he contracts COVID-19 while incarcerated because of his advanced age and underlying medical conditions; (2) changes in the sentencing law; and (3) his extensive rehabilitation. For the following reasons, Saleh's application is denied.

BACKGROUND

        On October 1, 1995, a jury in this District found Saleh guilty of (1) seditious conspiracy to wage war against the United States, (2) bombing conspiracy, and (3) attempted bombing. See United States v. Rahman, 189 F.3d 88, 103–04, 111 (2d Cir. 1999). On January 17, 1996, Judge Michael B. Mukasey sentenced Saleh to a total of 35 years in prison. Rahman, 189 F.3d at 111. The Second Circuit affirmed Saleh's conviction. Rahman, 189 F.3d at 160. Saleh is currently incarcerated at Federal Correctional Institution, Beckley ("FCI Beckley") in West Virginia. His projected release date is September 3, 2023.

        On March 28, 2020, Saleh submitted an administrative request to the warden at FCI Beckley seeking compassionate release in light of the COVID-19 pandemic coupled with his

pre-existing medical conditions.  (ECF No. 1161-2, at 1.)  Saleh is 64 years old and claims to be at risk for colon cancer, have problems with his knee, back, and eye, and suffer from respiratory issues.  (ECF No. 1161-2, at 1–2.)  The warden at FCI Beckley denied Saleh's request for compassionate release on April 7, 2020.  (ECF No. 1161-2, at 3–4.)

On May 12, 2020, Saleh filed a compassionate release motion with this Court.  (ECF No. 1160.)  This motion expands on his underlying medical conditions and adds arguments regarding changes in the sentencing law and his history of rehabilitation.  (See generally Def.'s Mot. for Modification of Sentence Based on Extraordinary and Compelling Reasons, ECF No. 1161 ("Def.'s Mot.").)

DISCUSSION

I.  Compassionate Release and the First Step Act, Generally

"A court may not modify a term of imprisonment once it has been imposed except pursuant to statute."  United States v. Gotti, 433 F. Supp. 3d 613, 614 (S.D.N.Y. 2020).  The federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A), is one such exception to this general rule.  Indeed, § 3582(c)(1)(A) permits a court to "reduce" a defendant's sentence if it finds that "extraordinary and compelling reasons warrant such a reduction" and the "reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(1)(A).  Even if "extraordinary and compelling reasons" exist, the court must also weigh the factors set forth in 18 U.SC. § 3553(a) to determine whether release is warranted.

Until recently, the statute permitted a court to consider reducing a defendant's sentence only "[u]pon motion of the Director of the Bureau of Prisons."  U.S.S.G. § 1B1.13.  However, the First Step Act of 2018 ("First Step Act"), Pub. L. No. 115-391, 132 Stat. 5194, "created an independent avenue for defendants to seek relief from the federal courts."  United

States v. Ebbers, 432 F. Supp. 3d 421, 423 (S.D.N.Y. 2020).  Now, courts may also consider these requests "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A) (emphasis added).

II.   Application

    A.  Exhaustion

This Court need not wade into the exhaustion question because more than 30 days have lapsed since the warden of FCI Beckley received Saleh's petition for compassionate release.  See United States v. Haney, 2020 WL 1821988, at *3 (S.D.N.Y. Apr. 13, 2020).  Thus, this Court considers the merits of Saleh's application.

    B.  Existence of "Extraordinary and Compelling Reasons" Warranting Reduction

The threshold question is whether Saleh presents "extraordinary and compelling reasons" warranting a sentence reduction.  18 U.S.C. § 3582(c)(1)(A)(i).  "Congress has delegated authority to the Sentencing Commission . . . to 'describe what should be considered extraordinary and compelling reasons for sentence reduction.'"  Ebbers, 432 F. Supp. 3d at 427 (quoting 28 U.S.C. § 994(t)).  Here, the relevant policy statement is U.S. Sentencing Guidelines § 1B1.13 (the "Policy Statement").

Application Note 1 to the Policy Statement states, in pertinent part, that extraordinary and compelling reasons exist when:

(A) Medical Condition of the Defendant . . .

    (ii) The defendant is —

        (I) suffering from a serious physical or medical condition,

>  (II) suffering from a serious functional or cognitive impairment, or
>
>  (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. . . .
>
> (D) Other Reasons. — As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

While the Policy Statement pre-dates the First Step Act's procedural changes, the amendments to the compassionate release statute "grant this Court the same discretion as that previously give[n] to the BOP Director, and therefore the Court may independently evaluate whether [a defendant] has raised an extraordinary and compelling reason for compassionate release" under the "catch-all" provision. United States v. Lisi, 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020); see also United States v. Olszewski, 2020 WL 2420483, at *2 (S.D.N.Y. May 12, 2020); United States v. Daugerdas, 2020 WL 2097653, at *2 (S.D.N.Y. May 1, 2020). Nonetheless, "U.S.S.G. § 1B1.13's descriptions of 'extraordinary and compelling reasons,'" Ebbers, 432 F. Supp. 3d at 427, provide helpful guidance for considering motions for compassionate release, Lisi, 2020 WL 881994, at *3 (citation omitted).

This Court—along with other judges in this district—has found that the increased risk of COVID-19 in prison settings, coupled with a defendant's pre-existing medical conditions and advanced age, may create "extraordinary and compelling reasons" under the Policy Statement. See, e.g., Daugerdas, 2020 WL 2097653, at *3 (finding extraordinary and compelling reasons under the Policy Statement for a 69-year-old defendant who "suffers from Type 2 diabetes, obesity, hypertension, and high cholesterol"); United States v. Scparta, 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 20, 2020) (granting compassionate release for defendant suffering

4

from "multiple medical issues that make him especially vulnerable to complications from COVID-19," including hypertension, sleep apnea, and high cholesterol).

While this Court acknowledges the unprecedented risk COVID-19 presents to prison populations, Saleh has not demonstrated that his pre-existing medical conditions, combined with his age, rise to the level of "extraordinary and compelling reasons" under the Policy Statement.  See U.S.S.G. § 1B1.13, cmt. n.1(A), (D).  Saleh contends—and the Government does not dispute—that his age puts him in the category of older adults at higher risk of complications from COVID-19.[1]  However, most medical issues in Saleh's application to the warden of FCI Beckley—i.e., problems with his knee, back, and eye, and a "risk" for colon cancer, (ECF No. 1161-2, at 1–2)—are not included among the Centers for Disease Control and Prevention's ("CDC") list of underlying medical conditions that increase an individual's risk of severe illness from COVID-19.[2]  Although the CDC Guidelines include chronic lung diseases and moderate-to-severe asthma, Saleh's BOP medical records do not indicate that he has any lingering respiratory issues following his bronchitis diagnosis in 2018.  (See 2019 & 2020 BOP Medical Records.)[3]

In his reply brief, Saleh mentions additional underlying medical conditions including latent tuberculosis, pre-diabetes, obesity, and high cholesterol.  (Reply Mem., ECF No. 1165 ("Def.'s Reply"), at 3–6.)[4]  Although arguments raised for the first time in a reply brief are

---

[1] See Older Adults, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated June 25, 2020).

[2] See People of Any Age with Underlying Medical Conditions, Ctrs. for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last updated June 25, 2020) (hereinafter, "CDC Guidelines").

[3] Saleh's BOP medical records will be docketed under seal by the Court.

[4] Saleh has also previously taken Prednisolone, a corticosteroid.  (Def.'s Reply, at 4.)  While the prolonged use of corticosteroids may cause an individual to be immunocompromised or have a weakened immune system, see

normally waived, see Melo v. United States, 825 F. Supp. 2d 457, 464 (S.D.N.Y. 2011), this Court acknowledges that Saleh received the requested medical records on May 27, 2020.  (Def.'s Reply, at 3.)  Nonetheless, this Court is unpersuaded that these additional ailments amount to "extraordinary and compelling reasons" justifying immediate release.  Besides obesity, none of his latest alleged underlying medical conditions are currently identified by the CDC as placing Saleh at a higher risk of severe illness from COVID-19.[5]  See CDC Guidelines.  And Saleh has not demonstrated that these comorbidities are particularly serious or unable to be controlled by the medical staff at FCI Beckley.  See, e.g., United States v. Sattar, 2020 WL 3264163, at *3 (S.D.N.Y. June 17, 2020) (denying compassionate release for defendant convicted of terrorism-related crimes with high blood pressure, atrial fibrillation, thyroid disease, latent tuberculosis, and high cholesterol because conditions were adequately addressed at BOP facility).

Indeed, as of the date of this Memorandum & Order, there have been no reported cases of COVID-19 at FCI Beckley.[6]  "While the absence of reported cases may be explained by a lack of routine testing and asymptomatic transmission, it may also indicate that the BOP's current protocols have been sufficient to prevent an outbreak."  Daugerdas, 2020 WL 2097653, at *3; see also United States v. Gray, 2020 WL 3050730, at *4 (S.D.N.Y. June 8, 2020) ("There is absolutely no indication that prison officials at Beckley Correctional Facility are failing to

---

CDC Guidelines, Saleh provides little information about his use of Prednisolone, including what effects it had on him, if any.  Finally, it is unclear whether Saleh is still routinely taking Prednisolone.  This Court notes that the record reveals his last 90-day prescription for Prednisolone was issued on December 31, 2019.

[5]     For example, "the CDC risk factors include only diabetes, a condition distinct from pre-diabetes." Barbecho v. Decker, 2020 WL 1876328, at *3 & n.2 (S.D.N.Y. Apr. 15, 2020); see also United States v. Deutsch, 2020 WL 1694358, at *1 & n.2 (E.D.N.Y. Apr. 7, 2020) ("According to the CDC, nearly 1 in 3 Americans have prediabetes.").

[6]     COVID-19 Cases, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited July 8, 2020).

mitigate the virus proliferation."). Saleh's speculative medical conditions, coupled with generalized arguments about FCI Beckley, are therefore insufficient.

Relying on the Policy Statement's "catch-all" provision, Saleh additionally argues that changes in the sentencing regime and his rehabilitation each constitute "extraordinary and compelling reasons" for compassionate release. First, Saleh's contention that he would have received a lower sentence if he were sentenced today is unsupported by the record. Judge Mukasey calculated Saleh's applicable Guidelines range to be 30 years' to life imprisonment. Applying U.S.S.G. § 5G1.2(d),[7] Judge Mukasey sentenced Saleh to a total of 35 years of imprisonment—20 years for seditious conspiracy, 5 years for bombing conspiracy, and 10 years for attempted bombing, to be served consecutively. While Saleh is correct that a court would not be <u>obligated</u> to apply U.S.S.G. § 5G1.2(d) following <u>United States v. Booker</u>, 543 U.S. 220, 244–45 (2005), a court nonetheless <u>may</u> impose consecutive sentences under U.S.S.G. § 5G1.2(d), <u>see</u> <u>United States v. Brown</u>, 843 F.3d 74, 82 (2d Cir. 2016). Saleh's argument that a judge sentencing him today would "most likely not run the sentences for Counts Five and Six consecutively," (Def.'s Reply, at 3), is therefore unfounded. Even prior to <u>Booker</u>, Judge Mukasey was entitled to sentence Saleh to 30 years of imprisonment, the bottom end of the Guidelines range. Instead, he opted to sentence him to 35 years. (<u>See</u> Transcript of Sentencing, January 17, 1996 ("Sentencing Tr."), at 51–52 ("I sentenced on the high side because the conduct involved here was of a high degree of seriousness and threatened a huge disaster. I believe that

---

[7] U.S.S.G. § 5G1.2(d) states: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment. In all other respects, sentences on all counts shall run concurrently, except to the extent otherwise required by law."

[the imposed] sentence is amply justified.").)  Thus, whether the Guidelines were mandatory appears to have been immaterial to Judge Mukasey when he imposed sentence.

In effect, Saleh is attempting to relitigate his case and dodge procedural requirements.  But his conviction and sentence have been upheld on direct appeal, see Rahman, 189 F.3d at 160, and after multiple collateral proceedings, see, e.g., Elgabrowny v. United States, 2003 WL 22416167, at *14 (S.D.N.Y. Oct. 22, 2003).  Additionally, his motion for relief under Federal Rule of Civil Procedure 60(b), which was also premised on an alleged intervening change in procedural law, was denied.  Saleh v. United States, 2014 WL 3855022, at *2–3 (S.D.N.Y. July 31, 2014) (Pauley, J.).  This Court need not decide when—if ever—an intervening change in the law might qualify as an "extraordinary and compelling reason[]" under the compassionate release statute.  Compare, e.g., Lisi, 2020 WL 881994, at *4 (holding "that it would be both improper and inconsistent with the First Step Act to allow [a defendant] to use 18 U.S.C. § 3582(c)(1)(A) as a vehicle for claiming legal wrongs, instead of following the normal methods of a direct appeal or a habeas petition"), with United States v. Haynes, 2020 WL 1941478, at *5, 15 (E.D.N.Y. Apr. 22, 2020) (finding that First Step Act's elimination of "stacking" 18 U.S.C. § 924(c) convictions for sentencing purposes could be considered an extraordinary and compelling circumstance under 18 U.S.C. § 3582(c)(1)(A)).  Here, Saleh's sentence was not a result of "stacking" § 924(c) convictions because he had none.  Moreover, Booker—a decision from 15 years ago—does not present an "extraordinary and compelling reason[]."

Second, Saleh argues that he is eligible for release based on his extensive rehabilitation.  This Court commends Saleh's institutional record and efforts at rehabilitation.  However, this factor alone cannot constitute an "extraordinary and compelling reason[]"

8

warranting release.  See 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason."); see also U.S.S.G. § 1B1.13, cmt. n.3 (same).  Indeed, every inmate should strive for a productive institutional record while incarcerated because that is what is expected.  Accordingly, because Saleh has failed to demonstrate other "extraordinary and compelling reasons" warranting a reduced sentence, Saleh cannot rely exclusively on his rehabilitation.  See, e.g., United States v. Sanchez, 2020 WL 2571074, at *2 (S.D.N.Y. May 21, 2020) ("[T]he Court must deny th[e] [compassionate release] motion because it is based exclusively on [the defendant's] purported rehabilitation while incarcerated.").  On that basis alone, Saleh's application is denied.  See Olszewski, 2020 WL 2420483, at *3.

    C. Section 3553(a) Factors

Even if this Court were to assume that Saleh's underlying medical conditions—combined with his age—are extraordinary and compelling reasons meriting consideration for compassionate release, this Court must also "consider[] the factors set forth in section 3553(a)."  18 U.S.C. § 3582(c)(1)(A).  Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) "the need for the sentence imposed;" (3) "the kinds of sentences available;" (4) the Guidelines ranges; (5) "any pertinent policy statement;" (6) "the need to avoid unwarranted sentence disparities among defendants with similar records;" and (7) "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a).  Application of the § 3553(a) factors requires an assessment of whether the relevant factors "outweigh the 'extraordinary and compelling reasons' warranting compassionate release . . . [and] whether compassionate release would undermine the goals of the original sentence."  Ebbers, 432 F. Supp. 3d at 430–31.  "Court[s] should be wary of using [a] motion

[for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences . . . ." Ebbers, 432 F. Supp. 3d at 430.

Here, the § 3553(a) factors weigh against granting Saleh's application. Although Saleh has served nearly 27 years of his sentence, he joined a terrorist conspiracy whose objective was the indiscriminate killing of Americans in the name of jihad. Saleh owned two gasoline stations in Yonkers, New York, and provided fuel to his co-conspirators as part of a terrorism plot to bomb bridges and tunnels in New York City. At sentencing, Judge Mukasey stated:

> [T]here is ample evidence in this record that the jury's verdict was correct. There was a tape recording of a conversation on June 4, 1993, a highly specific conversation about bombing tunnels between states in which Mr. Saleh was asked to help and agreed to help. The evidence shows that at a later date he did help by providing diesel fuel. It shows that on the night of his arrest he was well aware of what it was that he was being arrested for, and his conduct and his false statements that night all indicate his guilty knowledge.

(Sentencing Tr., at 49–50.)

Since the Guidelines did not specify a base offense level for the generalized offense of sedition, Judge Mukasey used the analogous treason guideline, U.S.S.G. § 2M1.1, to calculate Saleh's Guidelines range for the seditious conspiracy charge. Rahman, 189 F.3d at 145–46. The Second Circuit upheld that determination and Saleh's 35-year sentence, as well as Judge Mukasey's decision not to provide Saleh with a mitigating role reduction. Rahman, 189 F.3d at 145–60. Additionally, his co-conspirators who went to trial and were convicted of seditious conspiracy received similar sentences. See Rahman, 189 F.3d at 149 (table summarizing sentences imposed for each defendant).

Nevertheless, Saleh insists that the combination of his age, underlying health conditions, the COVID-19 pandemic, and his family situation tip the scales in favor of his

release. But Saleh's family circumstances were described in the presentence report submitted to Judge Mukasey before sentencing. (PSR ¶¶ 160–67.) Although Saleh's medical condition has worsened since the beginning of his incarceration, (see PSR ¶ 168), BOP medical records illustrate that Saleh is receiving adequate care for his current medical conditions. (See generally 2019 & 2020 BOP Medical Records.) While this Court is cognizant of Saleh's need for medical care, that need alone is insufficient to warrant compassionate release, especially given the severity of his criminal conduct.

## CONCLUSION

For the foregoing reasons, Saleh's motion is denied. The Clerk of Court is directed to terminate the motion pending at ECF No. 1160.

Dated: July 8, 2020
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.